UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FABRIKO ACQUISITION
CORPORATION,
   Plaintiff,

  v.              Case No. 05C0644

DEAN PROKOS, STEVEN R.
SORENSON, GREEN LAKE MARINA
PROPERTIES, LLC,
   Defendants.

---

FABRIKO ACQUISITION
CORPORATION,
   Plaintiff,

  v.              Case No. 05C0645

DEAN PROKOS, GREEN LAKE MARINA
PROPERTIES, LLC,
   Defendants.

---

## DECISION AND ORDER

Plaintiff Fabriko Acquisition Corporation brings this diversity action against defendants Green Lake Marina Properties LLC ("GLM"), its managing partner Dean Prokos and a Wisconsin lawyer, Steven Sorenson. Plaintiff's allegations are sometimes confusing, but plaintiff asserts that Sorenson participated in an attempt to cut it out of a transaction involving property in Green Lake, Wisconsin and that GLM and Prokos failed to follow through on a commitment to buy the property. All defendants now move for summary judgment, and defendant Sorenson also moves for sanctions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2003, GLM offered to purchase the Green Lake property, which was owned by a non-party, Alton Prillaman, for $850,000 contingent upon its obtaining financing and upon an environmental inspection. With the consent of the parties, Sorenson served as a facilitator or dual agent in connection with the transaction.[1] Prillaman and plaintiff accepted GLM's offer and agreed that Prillaman would receive $270,000 and plaintiff $580,000.[2] With Prillaman's and plaintiff's consent, GLM began storing building materials on the property. However, the environmental inspection was inconclusive and GLM was unable to obtain financing; thus, the deal fell through.

In April 2004, GLM, with Sorenson acting as its agent, again offered to purchase the property contingent on its obtaining financing. Concerned that it might be cut out of the deal, plaintiff filed a lawsuit against Sorenson and Prokos in federal court in Virginia seeking to enjoin the transaction. Plaintiff alleged that Sorenson committed malpractice by sharing plaintiff's confidential information and committed several other torts by attempting to facilitate a deal between Prillaman and GLM that excluded plaintiff. Plaintiff also alleged that Prokos unlawfully stored materials on the property.

To settle plaintiff's suit, GLM and Prillaman agreed to add plaintiff as a party to the April 2004 contract and to allocate the purchase price between plaintiff and Prillaman in the same way that the December 2003 contract did. The parties amended the contract but

---

[1]Although plaintiff suggests that Sorenson concealed his dual representation for some period, it also concedes that, upon learning of the dual representation, it consented to it.

[2]Plaintiff never makes clear its connection to the property.

once again made it contingent on GLM obtaining financing. GLM was unable to obtain financing, and the deal again fell through. Subsequently, plaintiff asked the court in Virginia to reinstate its suit, and in September 2004, plaintiff filed a second suit naming GLM and Prokos as defendants and alleging breach of the April 2004 contract.[3] The Virginia court consolidated plaintiff's suits and transferred them to this district.

In October 2004, Sorenson's counsel sent a letter to plaintiff's lawyers warning that their continuation of plaintiff's suit against Sorenson would be sanctionable under Fed. R. Civ. P. 11. Sorenson's counsel explained that plaintiff's suit against Sorenson was frivolous because plaintiff had no evidence that Sorenson had caused it to suffer damages. This was so because the deal that Sorenson had allegedly attempted to cut plaintiff out of had not gone through. Further, plaintiff had no evidence that Sorenson had caused the deal to fall through. Plaintiff's lawyers did not respond to the letter. On November 10, 2005, Sorenson's counsel served a formal Rule 11 motion for sanctions on plaintiff's counsel, accompanied by requests for discovery and a letter explaining that plaintiff's counsel had a twenty-one day safe harbor period to take remedial action. Plaintiff's counsel did not respond to the motion or the discovery requests and took no remedial action. Plaintiff has never presented any evidence that Sorenson caused it to suffer damages.

Throughout the present litigation, plaintiff has failed to comply with procedural rules and with the court's scheduling order. Among other things, plaintiff failed to serve

---

[3] In its briefs in response to the motions for summary judgment, plaintiff sometimes seems to suggest that GLM breached both the December and April contracts. However, plaintiff's claims do not appear to involve the December contract.

3

Sorenson until months after initiating the suit against him, failed to designate witnesses by the deadline established in the scheduling order, and failed to respond to Sorenson's requests for admission and to defendants' proposed findings of fact.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

The party moving for summary judgment bears the initial burden of demonstrating that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may satisfy its initial burden by pointing out that there is an absence of evidence to support the non-moving party's case. Id. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. Id. at 322-23. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989).

4

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

### III. DISCUSSION OF SUMMARY JUDGMENT MOTIONS

I first note the effects of plaintiff's procedural lapses. By failing to respond to Sorenson's requests for admissions, plaintiff will be deemed to have admitted certain facts. Fed. R. Civ. P. 36. These include that Prokos and GLM were unable to obtain sufficient financing to enable them to close on the sale of the Green Lake property and that there is no evidence in the record that Sorenson caused Prokos and GLM not to close. Banos v. City of Chi., 398 F.3d 889, 892 (7th Cir. 2005). Plaintiff suggests that its failure to respond does not matter because discovery was not yet closed at the time that defendants filed their summary judgment motions. I disagree. Plaintiff failed to timely respond and provided no good reason for such failure. In any event, discovery was closed as of April 15, 2006, and plaintiff still has never responded to defendants' requests for admissions.

In addition, plaintiff did not properly respond to defendants' proposed findings of fact as required by Civil L.R. 52(b)(1). Under the rule, the response "must refer to the contested finding by paragraph number and must include specific citation to evidentiary materials in the record which support the claim that a dispute exists." Id. The consequences of such failure are set out in Civil L.R. 56(2)(e), which states that "in deciding a motion for summary judgment, the Court must conclude that there is no genuine issue as to any proposed fact to which no response is set out." Thus, I will treat plaintiff

5

as having admitted defendants' statement of material facts. See Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 937 (7th Cir. 2003) (stating that a court accepts as true the material facts that a party failed to contest as required by local rule).

Among the facts that I accept as true are the following: "Sorenson did not disclose confidential information to Prokos in an effort to cut Fabriko out of any interest it might have in the proceeds of sale of the commercial property located at 745 South Street, Green Lake, Wisconsin," (Defs.' Proposed Findings of Fact ¶ 12); "[a]t no time after Green Lake executed the Offer would its bank, National Exchange Bank (the "Bank"), have extended financing to purchase the Property on the terms of the April Offer," (id. ¶ 17); "[t]he Bank had security interests in all of Prokos'[s] and Green Lake's assets, making it impossible for Green Lake to obtain financing for the Property in April 2004 and thereafter from any lender, including the Bank," (id ¶ 20); and "FAC was ultimately a party to the April Offer and thus was not cut out of any deal to purchase the Property," (id. ¶ 24).

In addition, in response to defendants' summary judgment motions, plaintiff submitted considerable inadmissible material. For example, plaintiff summarized a court hearing but submitted no transcript, making the summary hearsay. In addition, the affidavit of plaintiff's principal includes hearsay and speculation and mischaracterizes a Sorenson letter. In considering the motions before me, I may not consider inadmissible evidence.

Finally, aside from plaintiff's above-described procedural failures, I conclude that based on the evidence in the record, no reasonable jury could find in favor of plaintiff on any of its claims. I apply the law of the forum, here Wisconsin law, to plaintiff's substantive claims. Plaintiff first alleges that Sorenson and Prokos committed various misdeeds in connection with the April 2004 offer in an effort to help GLM negotiate a deal with

6

Prillaman, which did not include plaintiff. However, GLM renegotiated the offer and included plaintiff. Thus, there is no evidence in the record that plaintiff incurred damages as a result of anything that Sorenson or Prokos did before the renegotiation.

Plaintiff also claims that Prokos and GLM breached their agreement with it by not attempting to obtain financing. However, GLM and Prokos have presented evidence that they attempted to obtain financing but were unsuccessful. David Moody, a vice-president of GLM's principal lender, states that he told Prokos that the bank would not finance the purchase of plaintiff's property because of GLM's large amount of debt, and further states that he believes no other bank would either. Plaintiff has presented no admissible evidence to the contrary and, therefore, cannot prevail on its claim.

Plaintiff also alleges that Prokos and GLM did not negotiate in good faith but, even assuming that Wisconsin recognizes a duty of good faith in connection with the negotiation as opposed to the performance of a contract, see Metro Ventures, LLC v. GEA Associates, ___ Wis. 3d ___, 717 N.W. 2d 58, 66 (Wis. 2006) (stating that good faith has little to do with the formation of contracts), plaintiff presents no evidence from which a reasonable jury could conclude that defendants failed to negotiate in good faith. Plaintiff also alleges that Prokos unlawfully detained plaintiff's property by storing materials on it. Unlawful detainer, also called holding over, is governed by Wis. Stat. § 704.25. This claim fails because plaintiff presents no evidence that it owned the Green Lake property, that it had rights to the property as a landlord, or that GLM or Prokos wrongfully occupied the property.

## IV. SANCTIONS

Sorenson seeks sanctions against plaintiff and its counsel, although he mentions a specific sum only as to plaintiff's counsel. Under Fed. R. Civ. P. 11, I may impose

7

sanctions on lawyers or parties (or both) for submissions that are filed for an improper purpose or without a reasonable investigation of the facts and law necessary to support their claims. Senese v. Chi. Area I.B. of T. Pension Fund, 237 F.3d 819, 823 (7th Cir. 2001). Rule 11 requires that an attorney and/or party certify to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," Fed. R. Civ. P. 11(b), that the allegations and other factual contentions have a legally sufficient basis to support the claim. Fries v. Helsper, 146 F.3d 452, 458 (7th Cir. 1998). A frivolous argument or claim is one that is "baseless and made without a reasonable and competent inquiry." Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). The Seventh Circuit has endorsed the use of Rule 11 Sanctions to "discourage groundless litigation." Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers, 802 F.2d 247, 255 (7th Cir. 1986).

In the present case, I conclude that it is appropriate to impose sanctions on plaintiff's counsel under Rule 11. Plaintiff's suit alleged that it had been harmed because Sorenson cut it out of a deal between Prillaman and Prokos. Initially, the suit – as designed to forestall a threatened sale – may have been reasonable, but plaintiff presents no reasonable explanation as to why it continued the suit for years after it knew that the sale in question had not occurred. Plaintiff states that Sorenson caused losses equal to the difference between an alleged November 2003 oral contract and the December 2003 contract, and the difference between an alleged March 2004 oral contract and the figure in the renegotiated April 2004 contract. However, plaintiff has never pled oral contracts or

8

presented admissible evidence that they existed.[4] And regardless, since it is established that the contingencies in December and April contracts were never fulfilled, it is meaningless to compare any monetary figure to the figures in those contracts.

Further, in a letter of October 12, 2005, Sorenson's counsel warned plaintiff's counsel that plaintiff could not establish causation, and plaintiff's counsel ignored the letter. In a November 10, 2005 motion, Sorenson's counsel again warned plaintiff's counsel of plaintiff's proof problem, and again plaintiff's counsel did not respond. Plaintiff clearly failed to investigate the law or the facts or both when it maintained the suit against Sorenson after being put on notice of the problems with its case. Further, by not responding to discovery requests, plaintiff's counsel admitted by default that Prokos lacked financing to purchase the commercial property from Prillaman. With such fact conclusively established, plaintiff admitted that it did not have a viable claim against Sorenson.

I have no evidence that plaintiff directed its counsel to deal with its claim against Sorenson as it did; thus, I will sanction only plaintiff's counsel. I will impose sanctions in the amount of $2,500, which I conclude is sufficient to "deter repetition of such conduct" in the future. See Fed. R. Civ. P. 11(c)(1)(2). This amount should be paid into the court. See Fed. R. Civ. P. 11, Advisory Committee's Notes (1993 Amendments) ("Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into the court as a penalty").

## V. CONCLUSION

Therefore, for the reasons stated,

---

[4] Even if plaintiff had such evidence, the oral contracts would likely be barred by the statute of frauds. See Wis. Stat. § 706.02.

9

**IT IS ORDERED** that defendants' motions for summary judgment are **GRANTED**.

**IT IS FURTHER ORDERED** that defendant Sorenson's motion for sanctions is **GRANTED**.

**IT IS ADDITIONALLY ORDERED** that plaintiff's counsel shall pay $2,500 in sanctions to the clerk of this court by October 27, 2006.

**FINALLY, IT IS ORDERED** that these cases are **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 28 day of September, 2006.

/s_____
LYNN ADELMAN
District Judge